UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

EVAN C. WILHELM,

     Petitioner,

v.                                                              Case No. 4:19cv572-WS-HTC

RICKY D. DIXON,[1]

     Respondent.

_____/

## ORDER and REPORT AND RECOMMENDATION

Petitioner, Evan C. Wilhelm, proceeding *pro se*, filed an amended petition under 28 U.S.C. § 2254 challenging his conviction in the circuit court of Leon County, Florida, in 2011 CF 104. ECF Doc. 8. Petitioner raises three (3) grounds of ineffective assistance of trial counsel. The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After considering the amended petition and supporting memorandum, the State's response (ECF Doc. 14), and Petitioner's reply (ECF Doc. 18), the undersigned recommends the Petition be DENIED without an evidentiary hearing.

---

[1] Ricky D. Dixon succeeded Mark S. Inch as Secretary of the Florida Department of Corrections and is automatically substituted as the respondent. *See* Fed. R. Civ. P. 25(d). The clerk is directed to update the case file information to reflect Ricky D. Dixon as the Respondent.

## I.    BACKGROUND

### A.    Offense and Conviction

On January 9, 2011, Petitioner, a student at Florida State University, was drinking and playing with a loaded AK-47 semi-automatic rifle in his apartment, pointing it at various people who had gathered for a fraternity party. *Wilhelm v. State*, 253 So. 3d 736, 737 (Fla. 1st DCA 2018). As he was pointing the firearm at one young woman, Ashley Cowie, the firearm discharged, striking her in the chest and killing her. *Id.* The same bullet also injured another student, Keith Savino. Petitioner was charged in a 5-count information with manslaughter of Cowie by shooting with a firearm, possession of a firearm on school property, culpable negligence with injury for injuring Savino; possession of cannabis, and possession of drug paraphernalia. *Id.*; ECF Doc. 14-1 at 15.

At the time Petitioner committed the crime, he was four (4) months shy of his 21st birthday. ECF Doc. 14-4 at 101. Because Petitioner was not yet 21, he could have sought to be sentenced under Florida's Youthful Offender Act, Fla. Stat. § 958.011, *et seq.* (the "Act").[2] To take advantage of the Act, however, Petitioner would have had to plead guilty and be sentenced *before* his 21st birthday. *See* Fla.

---

[2] The maximum sentence under the Act is 6 years of incarceration. Fla. Stat. § 958.04(2)(d).

Stat. § 958.04 ("[t]he court may sentence as a youthful offender" any person who was "younger than 21 years of age at the time sentence is imposed.")[3].

However, retained counsel, Stephen Dobson and Richard Smith, mistakenly believed their client was 19 – not 20 – at the time of the offense, ECF Doc. 14-3 at 59, and, thus, did not discuss the impending deadline to take advantage of the Act with Petitioner prior to Petitioner's 21st birthday.  ECF Doc. 14-4 at 118.  After discovering the error, in November of 2011, Doc. 14-4 at 116, Petitioner's father, also a lawyer, filed a notice of appearance in the case, *id.* at 120, and hired a third counsel, Michael Alan Ceballos.  *Id.* at 121.

On March 30, 2012, the Assistant State Attorney faxed a plea offer to counsel Dobson and Smith, offering 10 years in FDOC custody followed by 5 years of probation and stating that it expired on April 26, 2012.  ECF Doc. 14-6 at 9-10.  That offer was not accepted.  It is also the subject of Ground Three of the petition and, as discussed, in that section, Petitioner disputes he was advised of that plea or provided information sufficient to make a knowing decision to reject the plea.

On April 26, 2012, Petitioner entered a negotiated open plea of no contest to Count 1, Manslaughter (maximum penalty 30 years DOC); Count 2, Possession of Firearm on School Property (maximum penalty 5 years DOC); and Count 3,

---

[3] This part of the Youthful Offender Statute was amended in 2019 to apply "if such crime was committed before the defendant turned 21 years of age" rather than "if the offender is younger than 21 years of age at the time sentence is imposed." Fla. Stat. § 958.04(1)(b).

Culpable Negligence with Injury (maximum penalty of 1 year DOC).  Under the terms of the agreement, the State agreed to Nolle Pross Counts 4 and 5.  ECF Doc. 14-1 at 38.

On June 15, 2012, the court rejected a downward departure argument and sentenced Petitioner to 20 years in the Department of Corrections followed by 10 years of probation.

### B.   Postconviction Procedural History and Timeliness under the Antiterrorism Effective Death Penalty Act

Generally, under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner has one (1) year from when the judgment becomes final to file an application for habeas relief.  28 U.S.C. § 2244(d)(1).  Such time is tolled by the filing and pendency of post-conviction motions, such as a Rule 3.800 or 3.850 motion.  28 U.S.C. § 2244(d)(2).  As discussed below, the instant petition is timely.

Petitioner filed a direct appeal of his conviction and sentence to the First District Court of Appeals ("First DCA"), but the appeal was voluntarily dismissed on March 18, 2013.  ECF Doc. 14-2 at 102, First DCA Case No.: 1D12-3420.  On June 3, 2013, seventy-seven (77) days later, Petitioner filed two postconviction motions.  The first was a Motion to Correct Sentence, *id.* at 106, which was granted in part and denied in part on February 9, 2017.  Petitioner appealed the state court's decision to the First DCA.  *See* First DCA Case No.: 1D17-0571.

The second was a 3.850 Motion for Post-Conviction Relief, ECF Doc. 14-6 at 65. It was corrected on June 28, 2013, ECF Doc. 14-2 at 118; an evidentiary hearing was held on January 14-15, 2016, ECF Doc. 14-4 at 85; and the state court denied the motion on April 12, 2016.[4] ECF Doc. 14-3 at 51. On May 17, 2016, following a summary denial of a motion for rehearing, Petitioner appealed the state court's denial to the First DCA. *See* First DCA Case No.: 1D16-2262.

The appeals in First DCA Case Nos. 1D16-2262 and 1D17-0571 were consolidated, and the First DCA entered a joint opinion affirming the denial of both motions on June 4, 2018. ECF Doc. 14-10 at 17. On June 19, 2018, Plaintiff filed a motion for rehearing. *Id.* at 22. Although the First DCA denied the motion, it granted clarification and, by superseding written opinion, once again affirmed the circuit court's denial of post-conviction relief. *Id.* at 36; *Wilhelm v. State* (1D17-0571), 253 So. 3d 736 (Fla. 1st DCA, August 10, 2018). The First DCA issued its mandate on August 31, 2018. ECF Doc. 14-10 at 41. Petitioner sought review from the Florida Supreme Court, which was denied. *Wilhelm v. State*, No. SC18-1519, 2018 WL 6704724, at *1 (Fla. Dec. 19, 2018); ECF Doc. 14-11 at 2.

Before the First DCA's mandate was entered, however, Petitioner filed a second or successive 3.850 petition on January 16, 2018. The state court denied the motion on June 27, 2018. Petitioner appealed the court's denial to the First DCA.

---

[4] Because it is not relevant to these proceedings, the undersigned has left out the interim motions relating to the recusal of counsel that were filed by the State after the 3.850 motion was filed.

*See* First DCA Case No.: 1D18-3911. The First DCA issued a *per curiam* affirmance without written opinion on July 22, 2019. *See Wilhelm v. State* (1D18-3911), 279 So. 3d 71 (Fla. 1st DCA July 22, 2019). The First DCA issued its mandate on September 27, 2019. ECF Doc. 14-12 at 127. Petitioner filed the instant federal petition on November 19, 2019. Because only 131 days ran off of the AEDPA one-year limit, the Petition is timely filed.

## II.   LEGAL STANDARDS

### A.   The Antiterrorism Effective Death Penalty Act ("AEDPA")

The AEDPA governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Under that act, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). A state court's violation of state law is not enough to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. *White*, 134 S. Ct. at 1702; *Casey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision."

*Harrington v. Richter*, 562 U.S. 86, 101 (2011). "[T]his standard is difficult to meet because it was meant to be." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018).

Finally, when reviewing a claim under 28 U.S.C. § 2254(d), a federal court must remember that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

## B.    Ineffective Assistance of Trial Counsel ("IATC") Claims

Petitioner's grounds for relief are premised on ineffective assistance of trial counsel. An IATC claim requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. The petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations the petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

## III.  ANALYSIS

Petitioner raises three (3) claims of ineffective assistance of counsel: (1) counsel miscalculated his age and failed to take advantage of the sentencing window during which he qualified for sentencing as a youthful offender; (2) counsel was ineffective for failing to admit to their error, which failure was a result of a conflict of interest between zealously representing Petitioner and protecting their reputations; and (3) counsel failed to convey sufficient information about a 10-year plea deal for Petitioner to make an informed decision on it. Respondent admits Petitioner exhausted these claims by raising them in state postconviction motions and on appeal to the First DCA, which issued an opinion affirming the denial of each

of the state claims relating to the current federal claims. *Wilhelm v. State*, 253 So. 3d 736 (Fla. 1st DCA 2018).[5]

Respondent argues; however, that the grounds fail on their merits under the *Strickland* analysis, particularly when analyzed through the highly deferential lens this Court is to apply to the state court's determinations. For the reasons set forth below, the undersigned agrees.

### A.   Ground One: IATC for Allowing Youthful Offender Act Eligibility to Expire

Petitioner, who was 20 years old when he committed the offense, argues he was prejudiced by counsel's failure to advise him of his right to plead guilty and seek sentencing under Florida's Youthful Offender Act prior to his 21st birthday. ECF Doc. 8 at 5. Petitioner's family hired counsel Stephen Dobson and Richard Smith on January 10, 2011, the day after the incident, ECF Doc. 14-4 at 186. Wilhelm turned twenty-one on May 2, 2011. *Id.* at 4-5. Counsel, however, were unaware of Petitioner's impending birthday, believing instead that he was 19 at the time of the offense and, thus, did not discuss the Youthful Offender Act with him until October 2011, after he had already turned 21.[6]

---

[5] Petitioner filed notice to invoke the discretionary jurisdiction of the Florida Supreme Court, but the Florida Supreme Court declined to exercise jurisdiction by order rendered December 19, 2018. *Wilhelm v. State*, — So.3d —, 2018 WL 6704724 (Fla. 2018).

[6] It was not until November that Petitioner's father uncovered the error and the expiration of the Petitioner's youthful offender status. ECF Doc. 14-4 at 116. After discovering the error, Petitioner's father, who was also a lawyer, filed a notice of appearance, *id.* at 120, and also retained new counsel, Michael Alan Ceballos. *Id.* at 121.

The First DCA was the last state court to consider this claim.  In doing so, the court determined no relief was warranted because, although counsel admitted they were wrong about Petitioner's age, this error did not affect their "overarching defense strategy [] to delay sentencing to give the victim's family time to heal, hoping that they would not oppose a mitigated sentence." *Wilhelm v. State*, 253 So. 3d 736, 738 (Fla. Dist. Ct. App. 2018).  Also, counsel testified they also wanted to delay the plea and sentencing to avoid having Petitioner sentenced by Judge Tamayo, the assigned judge at the time and whom they believed was generally more inclined to give out lengthier prison sentences.  *Id.*  Given counsel's strategy, the court concluded "the failure to explore sentencing under the Youthful Offender Act would simply not have made any difference in the outcome." *Id.*

The undersigned finds this conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).  As stated above, to show counsel was ineffective, Petitioner must not only meet the performance prong, but also the prejudice prong of *Strickland*.  It cannot seriously be disputed that counsel's failure to know their client's age was deficient.  As a result of this failure, counsel did not talk to Petitioner about the Youthful Offender Act until *after* he had already turned 21 and could no longer benefit from it.  That was also deficient.  *See* ECF Doc. 14-3 at 59 (trial court's discussion of counsel's testimony at the 3.850 hearing); ECF

Doc. 14-4 at 199 ("I've got to admit, we missed that.  We didn't tell him that he could qualify for a youthful sentence.").

Petitioner, however, did not show a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 689.  First, according to counsel, even were they aware of Petitioner's age, they would not have taken advantage of his youthful offender status because doing so would have been contrary to their strategy to delay sentencing and would not have given them sufficient time to investigate the incident.

Specifically, according to counsel they wanted to delay sentencing in hopes that with additional time to heal, the Cowie family would be more supportive of a lighter sentence.  Counsel also wanted to delay sentencing because Judge Tamayo was leaving, and the case would be assigned to a new judge, who, hopefully, would be more favorable when it comes to sentencing.  Counsel Dobson testified at the January 14, 2016 evidentiary hearing that Judge Tamayo had a reputation for being "very pro state in her sentencing, giving longer sentences than the defense would like in most cases."  ECF Doc. 14-8 at 53.  Dobson further testified that in his discussions with Petitioner, Petitioner indicated he did not want to be sentenced by Judge Tamayo and said "You know, Tamayo is leaving, don't act stupid" and allow him to be sentenced by her.  *Id.*

Petitioner argues his comment about Judge Tamayo should have no bearing because it was made in January 2012, after he had already turned 21, and thus has

no bearing on what he would have done back in 2011. ECF Doc. 18 at 12. The undersigned disagrees. The defense's feelings regarding their chances of success before Judge Tamayo is relevant to whether Petitioner would have pushed for sentencing under the Youthful Offender Act knowing that he would be sentenced by Judge Tamayo, or, as the state courts determined, regardless of whether Petitioner could have taken advantage of the Youthful Offender Act, he would not have do so because it meant being sentenced by Judge Tamayo. In other words, Petitioner's comment about Judge Tamayo merely corroborates defense counsel's concerns regarding Judge Tamayo back in 2011.

Also, when counsel were initially retained, Petitioner told them "he didn't pull the trigger, that he had no recollection of pulling the trigger, and then the gun went off." ECF Doc. 14-4 at 229; ECF Doc. 14-8 at 84. Thus, counsel needed time to investigate whether Petitioner may have had a defense to the assert i.e., whether the gun may have misfired. ECF Doc. 14-8 at 84. According to counsel, "we would never have recommended that we rush in without doing any investigation, without looking at the facts, and plead him guilty in six weeks." ECF Doc. 14-4 at 199-200. Indeed, as Smith stated at the evidentiary hearing on the post-conviction motions, "The problem is – is the course of action that everyone is suggesting that would have been best to take back then had no guarantee that Mr. Wilhelm would have been treated as a youthful offender. All it would have guaranteed is that he opened –

entered an open plea without any investigation taking place in this case." ECF Doc. 14-5 at 44-45.

Petitioner argues the state courts erred in giving credence to counsel's after-the-fact attempt to cloak an error as a strategic decision because counsel's conduct should be viewed "*at the time of the event*". ECF Doc. 18 at 10 (emphasis in original). Petitioner's argument, however, misconstrues the state court's analysis. The state courts did not determine counsel's conduct was not deficient because it was based on a strategic decision. Instead, the courts found counsel's explanation to be relevant to the issue of prejudice -- i.e., whether counsel's knowledge of Petitioner's correct age would have made a difference -- and determined it would not. In fact, Petitioner admitted at the post-conviction evidentiary hearing that even after learning about the Youthful Offender Act (but before realizing it had expired), "[t]he course of the defense didn't change. It was still to wait. It was still a very much do-nothing approach." ECF Doc. 14-8 at 145.

Second, application of the Youthful Offender Act is discretionary, and there was considerable evidence that the sentencing judge would not be likely to apply it in this case. *See Fla*. Stat. § 958.04(1) (a judge "may sentence as a youthful offender" any person who meets the requirements). Counsel testified he did not believe Judge Tamayo would have exercised that discretion in favor of Petitioner, ECF Doc. 14-4 at 200 ("It's absolutely left to the discretion of the court. And my honest opinion as a lawyer at that time was Judge Tamayo would not have done that

anyway.").  Indeed, despite getting a different judge at sentencing, Judge Dodson, counsel was unsuccessful in getting the court to agree to a downward departure.

After hearing arguments in support of a downward departure, Judge Dodson stated, "This is a case that may very well fall within the downward departure exception, but I do not find a downward departure to be appropriate." ECF Doc. 14-2 at 89.  The judge continued:

> I tell you, I look at the small arsenal that was in that fraternity house room and it scares the dickens out of me. And to think that we've got young people on these campuses that have these kinds of small arsenals in their room, that's a tragedy waiting to happen.  And it is very, very sad on the Cowie family's part, the Wilhelm's family part. And it's just real, real scary. Those of you that are here today that are in college and all now, let this be a message to you because it really is extremely scary. And when you're young, sometimes you think you're invincible or invisible, but you start mixing guns and alcohol and drugs and all of that, and this is a classic example of what's going to happen.

*Id.* at 89-90.

Considering the statements made by the sentencing judge, along with the testimony provided by counsel, and the deference to be accorded to the state courts, the undersigned finds the state courts did not act contrary to *Strickland* or misapply the facts in determining that Petitioner had not shown a reasonable probability of a different outcome if counsel had been able to argue the Youthful Offender Act. Petitioner, therefore, is not entitled to habeas relief on Ground One.

**B.     Ground Two:  IATC Based on a Conflict of Interest"**

In a related argument, Petitioner argues, in Ground Two, that counsel's error in Petitioner's age created a conflict of interest between counsel and Petitioner, because it put counsel in the position of either helping Petitioner by admitting their error at sentencing or protecting their professional reputations and malpractice coverage by not revealing their error.  ECF Doc. 18 at 16-26.

According to Petitioner, on January 27, 2012, Dobson personally promised Petitioner's father he would confess his miscalculation of Petitioner's age to the court as mitigation, explain that they considered Petitioner an "ideal" candidate under the Youthful Offender Act, and ask the court for a lawful sentence that resembled a Youthful Offender type sentence of approximately 6 years. *Id.* at 9.  It is undisputed, however, that Dobson did not admit counsel's error at sentencing.  Petitioner takes issue with the fact that counsel did not do so even after the prosecutor argued, "Clearly, youthful offender does not apply.  The defendant at the time this happened was twenty years old.  Had he made the decision to come in and enter a plea, he would have been able to get sentenced pursuant to that statute.  But he chose not to." ECF Doc. 14-2 at 76.

Petitioner further argues this Court should review this issue *de novo* because it was not adjudicated on the merits by the First DCA or lower state court. Specifically, Petitioner argues neither court's written decisions addressed the issue of a conflict of interest.  ECF Doc. 18 at 21.  The undersigned disagrees.  While it is

true that neither the First DCA nor the lower state court discussed whether a conflict existed, it is clear the lower state court specifically addressed Petitioner's argument "that attorney Dobson represented that he would apprise the Court of the oversight with regard to the running of youthful offender status at sentencing and complains that Mr. Dobson failed to do so." ECF Doc. 14-7 at 86. Thus, the lower court addressed the conflict argument on the merits and its decision is entitled to deference.[7]

The lower court rejected this claim, finding that despite any conflict counsel vigorously defended Petitioner and presented a great amount of mitigating evidence.[8] The court explained that counsel raised the Youthful Offender Act in the sentencing memo and how "at the time of the event and because of his youth, the Defendant was eligible to be sentenced under the Youth Offender Act" but that "he is no longer statutorily eligible for such a sentence." ECF Doc. 14-3 at 60. Counsel also described the unfairness of the situation where "a Defendant turns 21 years of age just weeks or months after the event" and noted that counsel "can be placed in

---

[7] The First DCA found "no merit to the argument that counsel's failure to own up to miscalculating Mr. Wilhelm's age at the sentencing hearing created a conflict of interest and ineffective assistance." *Wilhelm v. State*, 253 So. 3d 736, 738 (Fla. Dist. Ct. App. 2018). The court, however, did not provide a rationale for its decision. Thus, this Court should "look through" that decision to the rationale provided in the lower court's April 11, 2016 order denying the postconviction motion. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

[8] As the Respondent points out, even under a conflict of interest argument, Petitioner must still meet the prejudice prong under *Strickland*. ECF Doc. 14 at 41. Petitioner does not dispute this legal principle. ECF Doc. 18 at 17.

the impossible position of having to elect between a thorough and complete defense or alternatively to rush to a sentencing hearing." *Id.*

In fact, defense counsel's sentencing memorandum a) explained defendant's remorse; b) described his full cooperation with law enforcement; c) asserted that the incident was entirely accidental; d) raised the issue of the defendant's youth and immaturity; and e) asserted bases for downward departure as well as rehabilitative conduct. Defense counsel's efforts to mitigate sentencing was not limited to just the sentencing memo, but included the presentation of significant mitigation evidence, which, as the lower court noted, included: (1) at least 25 letters from individuals that essentially attested to Mr. Wilhelm's character, his genuine remorse, and further requested a minimum sentence and (2) testimony from twelve (12) witnesses who testified on behalf of Petitioner. ECF Doc. 14-3 at 63-65.

Thus, while counsel should have fallen on the sword and admitted their error, their failure to do so was not prejudicial. As the state court recognized, counsel were diligent in their efforts to present mitigation. They explained to the judge the unfairness Petitioner faced with regard to the Youthful Offender's triggering date being the offender's age at sentencing rather than at commission of the crime. They offered many letters, biographical history and witnesses in support of Petitioner, and they "argued vigorously for leniency and a downward departure." ECF Doc. 14-3 at 65.

Despite the volume of mitigating evidence that was presented to Judge Dodson and the court's acknowledgment that this was a case for a downward departure, the circuit court sentenced Petitioner to 20 years because of the circumstances of the offense. The tenor of the statements made by the trial court at sentencing, after considering the overwhelming amount of mitigation presented, show that it was unlikely one additional factor, counsel's admission, would have tipped the scales in Petitioner's favor.

Moreover, Petitioner's argument of prejudice is undermined by the fact that at the time of sentencing, Petitioner was represented by four (4) attorneys: Dobson, Smith, Petitioner's father, and Ceballos. Either Petitioner's father or Ceballos could have easily told the court about Dobson and Smith's error if they felt such information would tip the scales. Petitioner is not entitled to relief on Ground Two.

### C. Ground Three: IATC as to Plea Negotiations

As stated above, on March 30, 2012, the Assistant State Attorney faxed a plea offer to counsel Dobson and Smith, offering 10 years in FDOC custody followed by 5 years of probation and stating that it expired on April 26, 2012. ECF Doc. 14-6 at 9-10. Petitioner argues in Ground Three that counsel failed to convey to him two previous offers that had been made prior to the 10-year offer, one for 20 years, and one for 15 years. According to Petitioner, without knowledge of this plea history, Petitioner was left making an uninformed decision regarding the 10-year plea offer.

Petitioner did not know, for example, that the 10-year offer was a "drop dead" final offer.  ECF Doc. 18 at 27.

In Petitioner's initial 3.850 motion, Petitioner argued that counsel never informed him of the 10-year plea.  ECF Doc. 14-6 at 105.  The state court, however, found Dobson and Smith's testimonies that the plea offer was communicated to be credible as it was consistent with the other evidence presented.  ECF Doc. 14-3 at 58 (April 12, 2016).  The state court also determined the "evidence establishes that Mr. Wilhelm was simply not prepared to agree to a sentence of 10 years in the Department of Corrections."  *Id.*

Given the state court's conclusion, Petitioner revised this argument in his successive 3.850 motion, filed January 16, 2018, accepting, "in arguendo", that the 10-year plea offer was presented to him.  ECF Doc. 14-12 at 14.  Thus, rather than contend he did not know about the plea, Petitioner argued in the successive motion, as he does here, that he was not given all the facts needed to be fully informed in rejecting that 10-year plea offer.  ECF Doc. 14-12 at 9.  The state court summarily rejected Petitioner's argument.  The court stated it had "reservations that the offers were formal enough to requirement conveyance" and found a lack of prejudice, because Petitioner "would not have accepted either plea offer."  ECF Doc. 14-12 at 45.

Although the state court did not specifically address how the purported lack of knowledge of those plea offers impacted Petitioner's ability to make an informed

decision regarding the 10-year plea, this Court may nonetheless assume the lower court denied this claim for relief on the merits. "Ordinarily, when a state court addresses some claims raised by a defendant, but not a claim that is later raised in a federal habeas proceeding, the federal habeas court presumes that the state court denied the claim on the merits."[9] *Julio Garcia, IV v. Sec'y, Dep't of Corr.*, 2021 WL 1516070, at *9 (M.D. Fla. Apr. 16, 2021) (citing *Johnson v. Williams*, 568 U.S. 289 (2013)). Neither party argues the state court did not address this claim on the merits.

The standard set forth in *Strickland* applies to ineffective assistance of counsel claims arising out of the plea process, including to the negotiation and consideration of pleas that are rejected or lapse. *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014). "Counsel has an obligation to consult with his client on important decisions and to keep him informed of important developments in the course of the prosecution." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991). This obligation includes informing a client about formal plea offers presented by the government and correctly advise a client about such offers. Failure to do so is ineffective assistance of counsel. *See Missouri v. Frye*, 566 U.S. 134, 144-45 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012).

---

[9] Although this presumption is rebuttable, particularly where it appears the lower court inadvertently overlooked the argument, the result would be the same even if this Court were to apply a *de novo* standard of review. *Pittman v. Sec'y, Fla. Dep't of Corr.*, 871 F.3d 1231, 1245 (11th Cir. 2017).

In the context of a rejected plea offer, the prejudice prong requires the movant to show "a reasonable probability that but for counsel's ineffectiveness: (1) 'the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)'; (2) 'the court would have accepted its terms'; and (3) 'the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.'" *Osley*, 751 F.3d at 1222 (quoting *Lafler*, 566 U.S. at 164).

As stated above, in the initial 3.850 motion, Petitioner argued counsel did not advise him of the 10-year plea deal. As Petitioner acknowledge in his reply, "the state court credited Dobson and Smith's account that the 10-year offer was conveyed." ECF Doc. 18 at 31. Petitioner specifically states he "does not challenge this finding" here. *Id.* In addition to finding Petitioner's position to be less credible, the circuit court also specifically found that Petitioner "was simply not prepared to agree to a sentence of 10 years in the Department of Corrections." ECF Doc. 14-3 at 58. Furthermore, the first 3.850 judge credited counsel Smith's testimony that "his client's position was that he would only consider up to two years in the Department of Corrections" and that "the client's father Robert Wilhelm indicated they would never accept more than three years." ECF Doc. 14-3 at 57.

The circuit court's findings, particularly its credibility determinations, are entitled to deference and support a finding that Petitioner would not have accepted

the 10-year plea, regardless of what he had been told about that plea. This finding is further supported by Petitioner's testimony (when he claimed he had not been told about the 10-year plea), that he would have accepted the plea without knowing more and even without any additional information. ECF Doc. 14 at 56-57. Thus, Petitioner cannot show he was prejudiced by counsel's failure to advise him of the plea negotiation history going from 20 years, then to 15, and finally to 10.

In the reply, Petitioner offers only his own after-the-fact claims that he would have accepted a ten-year plea. However, "after the fact testimony concerning [the movant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991). For these reasons, Petitioner is not entitled to habeas relief on Ground Three.

## IV.    CONCLUSION

### A.    Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Additionally, this Court must take into account the deferential standards prescribed by § 2254. *See id.* Upon consideration,

the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

### B.   Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Case No. 4:19cv572-WS-HTC

Accordingly, it is ORDERED: the clerk shall update the electronic docket to substitute Ricky Dixon, in place of Mark Inch, as the current Secretary of the Florida Department of Corrections.

It is also respectfully RECOMMENDED:

1.    That the amended petition, ECF Doc. 8, be DENIED without an evidentiary hearing.

2.    That a certificate of appealability be DENIED.

3.    That the clerk be directed to close the file.

At Pensacola, Florida, this 28th day of February, 2022.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.